Wanamaker, J.
The sole question in this case is, Does the statute of limitations, raised by the defendant’s demurrer, bar plaintiff’s right of action? In short, Did more than one year intervene between the date upon which her cause of action “accrued” and the date upon which such action was commenced ?
Both courts below found that the statute of limitations, Section 11225, General Code, barred the plaintiff’s right of action.
Naturally the petition must stand or fall upon its own allegations. The third amended petition, to which the demurrer was interposed, contains among other things the following allegations:
“That on December 29, 1913, the plaintiff [Louise Bowers] sustained a fracture of both bones of her left leg just above the ankle joint, known as and commonly called the tibia and fibula, and other injuries to her left ankle joint not then and not now fully understood by plaintiff'; that on that date the defendant [Leon B. Santee] was advised of plaintiff’s injury and called to her home and employed by her to treat her, and then and there, as a physician and surgeon, was employed and undertook to and did treat plaintiff for her injury, until cured and at first treatment attempted to reduce the fracture ; that the defendant, as such physician and surgeon so employed by the plaintiff, made an examination of her injury,” etc.
*363 The petition at great length and with much detail avers that the first attempt to reduce the fracture and treat said injury was unsuccessful, and that, thereafter, in about a week, the defendant again attempted to set or reset the fractured limb. The petition continues, “and in so doing he again negligently and without any care failed to place the fractured ends of the bones together, but placed them in such position that had the limb been kept stationary and properly treated thereafter the bones would have united and healed.”
The petition contains the further averment that the defendant “afterwards advised and instructed the plaintiff to put her weight on her left foot, and thereafter instructed and directed the plaintiff to move about on crutches and use her leg and ankle, and that the defendant pursuant to his employment, which was continuous from the time he first treated plaintiff’s injury, continued to so treat, direct, advise and counsel plaintiff concerning her injury until the.... day of May, 1914, all of which treatment, counsel, advice and direction so given to the plaintiff by the defendant pursuant to his employment as her physician prevented the ends from the broken bones from uniting, and all of such treatment so continued by the defendant until the......day of May, 1914, without the exercise of due care on his part as a physician, particularly the treatment after the plaintiff’s injuries were treated the first and second time and after her limb was set, was the chief and proximate cause of her injury and disability; that the defendant did not exercise due and *364 ordinary care in his treatment during the entire time he treated plaintiff,” etc.
Boiled down, the petition alleges that the contract of employment between the surgeon and his patient continued from December 29, 1913, to May, 1914; that defendant’s failure to exercise due care and reasonable skill in the treatment of the broken bones was such as to cause her great injury, suffering and permanent disability, by reason of which she claims she was damaged in the sum of $10,000.
The question, then, in this case, is, When did the statute of limitations begin to run as against the plaintiff ?
The relation of surgeon and patient grows out of a contract of employment, express or implied, entered into between them. That contract of employment, as pleaded in the petition, covers the full period from December 29, 1913, to May, 1914. The action in this case was begun in April, 1915, more than a year from the date of the fracture, but less than a year from the date the patient was discharged.
If, under the allegations of the petition, the statute began to run in December, 1913, or the week following, when the resetting occurred, then it is evident that the statute was a bar to her right of action and the demurrer was rightly sustained. If, upon the contrary, under the allegations of the petition, the right of action did not accrue until May, 1914, then it is equally evident that said cause of action was not barred by the statute.
One of the most carefully considered cases before this court touching the question as to when the *365 statute of limitations begins, to run for malpractice is the case of Gillette v. Tucker, 67 Ohio St., 106. The first two paragraphs of the syllabus in that case are helpful in a right understanding and application of the contract of employment between surgeon and patient. The language is as follows:
“1. A surgeon and physician, employed to treat a case professionally, is under an obligation, which the law implies from the employment, to exercise the average degree of skill, care and diligence exercised by members of the same profession, practicing in the same or a similar locality, in the light of the present state of medical and surgical science; and that he will indemnify the patient against any injurious consequences which may result from his want of ordinary skill, care and attention in the execution of his employment.
“2. It is the duty of the physician and surgeon to exercise due and ordinary skill, care and attention, not only in and about an operation which he decides to be necessary, but also, in the absence of a mutual understanding, or notice to the contrary, to render such continued further care and treatment as the necessity of the case requires; and he is liable for injuries and damages which proximately result from the want of such ordinary skill, care and attention.”
The doctrine announced in these two paragraphs is very plain and practical, so that both surgeon and patient will have their respective interests abundantly safeguarded. The doctrine is promotive of the exercise of reasonable skill, care and treatment by the surgeon, not only at the specific time of the' *366 operation, but also during the subsequent period of treatment necessary to a reasonable and substantial recovery.
The patient relies almost wholly upon the judgment of the surgeon, and under the usual circumstances of each case is bound so to do, and if the injury is not reduced, and a normal condition restored, as fully or as speedily as expected, the patient is still at liberty to rely upon the professional skill, care and treatment to complete such recovery so long as the surgeon continues his employment with reference to the injury.
In this case the petition avers that such continued further care and treatment by the surgeon was not terminated until May, 1914, and the allegation is further clearly and expressly made that it was the failure in care and treatment covering this whole period that was the proximate cause of the injuries from which plaintiff suffered.
Under the doctrine in Gillette v. Tucker, supra, when applied to the allegations of the petition, the statute of limitations did not begin to run against the plaintiff until May, 1914, and, therefore, this action was not barred at the time it was instituted.
It is but fair to say in justification of the judgments below that the decision in Gillette v. Tucker was by a divided court, that stood 3 to 3, and that Judge Davis wrote a rather lengthy, and vigorous dissenting, opinion, taking direct issue with the opinion of the court by Judge Price.
A few years later the case of McArthur v. Bowers, 72 Ohio St., 656, involving substantially the same question, was submitted to the court. In the meantime there had been a change in the personnel *367 of the court. The entry in this last case is as follows :
“Judgment reversed and that of the court of common pleas affirmed on the doctrine of the dissenting opinion in Gillette v. Tucker, 67 Ohio St., 106.
“Davis, C. J., Shauck, Crew and Summers, JJ., concur.
“Price and Spear, JJ., dissent.”
If McArthur v. Bowers, supra, was rightly decided, we still hold that under the allegations of the petition the statute of limitations did not begin to run until May, 1914. We, however, most respectfully disagree with and disapprove the McArthur case and we approve and reaffirm the doctrine announced in the Gillette case.
Physicians and surgeons exercising reasonable care and skill need have no fear of it. Reckless and careless physicians and surgeons should be kept in fear of it.
The law should not require impossible or unreasonable things. It should not impose upon the patient a duty that he can only know through expert knowledge which he does not possess, but as to which he is compelled to accept the judgment of his physician or surgeon.
In this particular case the patient could not know just when the initial trouble occurred that resulted in the alleged mistreatment. True she could know when the fracture occurred, but the surgeon was not responsible for that. Whatever responsibility he had was in connection with the: treatment. The treatment did not include merely the immediate and isolated resetting or reduction or adjustment, but *368 manifestly the subsequent care and treatment by the surgeon was as essential to full recovery and restoration of usefulness as was the initial setting.
The patient had a right to rely upon the surgeon doing such things to restore the leg as reasonable care and skill would require, and he has a right to continue so to rely until the contract of employment is at an end.
Moreover, it is clearly just to the surgeon that he be not harassed by any premature litigation instituted in order to save the right of the patient in the event that there be substantial malpractice. The surgeon should have all reasonable time and opportunity to correct the evils which made the operation or treatment necessary, and even reasonable time and opportunity to correct the ordinary and usual mistakes incident to even skilled surgery. The doctrine announced here is conducive to that mutual confidence that is highly essential in the relation between surgeon and patient.
It is, therefore, held that in an action for breach of contract the statute of limitations does not begin to run until the contract relation has been terminated.
Judgment reversed and cause remanded with instructions to overrule the demurrer, and for such other and further proceedings as may be required by law.

Judgment reversed.

Jones, Matthias, Johnson, Donahue and Robinson, JJ., concur.
Nichols, C. J., dissents.